**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL SCIORE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 20-cv-6035 |
| | : | |
| CENTRIC BANK, | : | |
| Defendant. | : | |

<u>**MEMORANDUM**</u>

**SITARSKI, M.J.**                                                                                    **July 23, 2021**

Presently pending before the Court is Defendant's Motion for a Protective Order (Def.'s First Mot. for Pro. Order, ECF No. 19), Plaintiff's Opposition (Pl.'s First Opp., ECF No. 21), Defendant's Reply (Def.'s First Reply, ECF No. 22), and Plaintiff's Sur-reply (Pl.'s First Sur-reply, ECF No. 24). Also pending before the Court is Defendant's Second Motion for a Protective Order (Def.'s Sec. Mot. for Pro. Order, ECF No. 25), Plaintiff's Opposition (Pl.'s Sec. Opp., ECF No. 28), and Defendant's Reply (Def.'s Sec. Reply, ECF No. 29). For the reasons that follow, each of Defendant's motions is **GRANTED IN PART** and **DENIED IN PART**.

## I.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff Michael Sciore became acquainted with Defendant Centric Bank's (the Bank) management, including Bank president Patricia Husic, in 2014, after one of his business contacts, Don Bonafede, began working there. (Compl., ECF No. 1-15, at ¶ 11; Answer, ECF No. 3, at ¶ 11). Plaintiff contends that in 2015, the Bank had Bonafede ask Sciore, a former owner of a mortgage company, for "assistance" or "direction" with its residential mortgage division. (Compl., ECF No. 1-15, at ¶¶ 9, 13; Answer, ECF No. 3, at ¶¶ 9-13). Sciore claims that over the next two years he provided Husic and other Bank leadership access to training

software he had developed and consulting advice regarding how to establish and develop the division, which launched in January 2016.  (Compl., ECF No. 1-15, at ¶¶ 16-20).  He avers that between February 2016 and early 2018 he also successfully recruited three individuals with whom he had previously worked – Christopher Bickel, Joseph Bell and Anthony Panto – to work in the Bank's residential mortgage division.  (*Id.* at ¶¶ 21-22).

According to Sciore, he provided this assistance because he wanted to strengthen his relationship with the Bank and his reputation as a business expert, because the Bank had promised him referrals and a "more favorable environment" for his transactions with it, and because he believed that the Bank would "otherwise compensate him for his assistance."  (*Id.* at ¶¶ 36-38).  However, the Bank "has failed to recompense Mr. Sciore's assistance with any sort of compensation or reciprocal treatment, and to this day has failed to render any benefit whatsoever to Mr. Sciore for the substantial and valuable services he provided."  (*Id.* at ¶ 39).

The Bank asserts that by 2015 it already had a residential mortgage division and that it began recruiting Bickel prior to its involvement with Sciore.  (Answer, ECF No. 3, at ¶¶ 14, 25). It maintains that Sciore provided no further assistance than referring Bell and Panto, who were looking for work, to the Bank and offering the use of his software as "a simple thank you gift," according to an email he sent at the time.  (*Id.* at ¶¶ 15, 18).  It further avers that Bell and Panto no longer work for the Bank and generated no appreciable revenue for it during their short period of employment.  (*Id.* at ¶ 30).

On November 12, 2020, Sciore filed a two-count complaint for unjust enrichment and *quantum meruit* against the Bank in the Philadelphia Court of Common Pleas.  (Compl., ECF No. 1-15).  After removing the case to the District Court for the Eastern District of Pennsylvania, the Bank filed its answer with affirmative defenses on December 15, 2020.  (Answer, ECF No. 3).  The Bank filed a motion for a protective order as to several of Sciore's first set of requests

for production of documents (First RFPs) on April 21, 2021.  (Def.'s First Mot. for Pro. Order, ECF No. 19).  Sciore responded on May 5, 2021.  (Pl.'s First Opp., ECF No. 21).  On May 11, 2021, the Bank filed a reply in support of its motion, to which Sciore filed a sur-reply on May 20, 2021.  (Def.'s First Reply, ECF No. 22; Pl.'s First Sur-reply, ECF No. 24).

Sciore served a second set of requests for production of documents (Second RFPs). (Second RFPs, ECF No. 25-3) on May 26, 2021.  On June 7, 2021, the Bank filed a motion for a protective order as to the Second RFPs.  (Def.'s Sec. Mot. for a Pro. Order, ECF No. 25).  Sciore responded on June 21, 2021.  (Pl.'s Sec. Opp., ECF No. 28).  On June 28, 2021, the Bank filed a reply in support of its motion.  (Def.'s Sec. Reply, ECF No. 29).


## II.    LEGAL STANDARD

"[T]he party seeking discovery must first demonstrate relevance before the party seeking a protective order must demonstrate good cause."  *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010), *aff'd*, No. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010). Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Relevance is generally "construed broadly to encompass any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).  Although liberal, discovery

should not be unlimited.  *Upshaw v. Janssen Res. & Dev.*, *LLC*, No. 11-7574, 2014 WL 1244047, at *3 (E.D. Pa. Mar. 26, 2014).  "Discovery should not serve as a fishing expedition." *Id.*

Once the discovering party demonstrates relevance, a party seeking a protective order must show that good cause exists to limit or foreclose discovery by demonstrating a particular need for protection.  *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) (citation omitted).  Injury includes annoyance, embarrassment, oppression, or undue burden or expense.  *See* FED. R. CIV. P. 26(c)(1). The alleged injury must be "clearly defined and serious" and "so unreasonable as to justify restricting discovery."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (citation omitted); *DeFelice v. Consol. Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989) (citing 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2035 (1970)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not establish good cause.  *Cipollone*, 785 F.2d at 1121.

The Third Circuit has set forth a list of seven factors that a trial court may consider in determining if good cause exists to issue a protective order:

> 1. whether disclosure will violate any privacy interests;
>
> 2. whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3. whether disclosure of the information will cause a party embarrassment;
>
> 4. whether confidentiality is being sought over information important to public health and safety;

5. whether the sharing of information among litigants will promote fairness and efficiency;

6. whether a party benefitting from the order of confidentiality is a public entity or official; and

7. whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994)) (internal citations omitted).

This list is not "exhaustive," but neither is it "mandatory." *Id.* The trial court "is best situated to determine what factors are relevant to" any given dispute, but it must always balance private and public interests. *Id.* (quoting *Pansy*, 23 F.3d at 789) (internal citation omitted).

"When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result." *Pansy*, 23 F.3d at 787 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 432–33 (1991)). Rather, if the court determines that disclosure is warranted, the issue becomes whether disclosure should be limited as set forth in Rule 26(c)(1). *Id.*; FED. R. CIV. P. 26(c)(1). "Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously," including, most commonly, by limiting who may access the information and for what purpose. *Pansy*, 23 F.3d at 787 (quotation omitted).

## III.   DISCUSSION

### A.   The Parties' Attempts to Resolve the Dispute

As a threshold matter, Sciore requests that I deny the Bank's motions on the basis that they violate the Court's Local Rules and my Policies and Procedures. (Pl.'s First Opp., ECF No.

21, at 5-6 (citing E.D. Pᴀ. Lᴏᴄᴀʟ R. Cɪᴠ. P. 26.1(f); J. Sitarski's Policies and Procedures at 3);

Pl.'s Sec. Opp, ECF No. 28, at 1).  Local Rule 26.1(f) provides: "No motion or other application

pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule

shall be made unless it contains a certification of counsel that the parties, after reasonable effort,

are unable to resolve the dispute."  E.D. Pᴀ. Lᴏᴄᴀʟ R. Cɪᴠ. P. 26.1(f).  My Policies and

Procedures governing "Discovery Conferences and Dispute Resolution" state:

> Discovery should be conducted in a voluntary, candid, cooperative,
> and timely manner. Judge Sitarski expects the parties to resolve
> discovery disputes without Court intervention. Should counsel be
> unable, in good faith, to resolve their dispute, Judge Sitarski permits
> contact with the Court so that telephone or chambers conferences
> may be set up to resolve outstanding issues. Judge Sitarski prefers
> to resolve discovery disputes by the use of written motions.

J. Sitarski's Policies and Procedures at 3.

Sciore asserts that the Bank violated Local Rule 26.1(f) by not including the required

certification as to its first motion or conferring in good faith as to either motion.  (Pl.'s First

Opp., ECF No. 21, at 6; Pl.'s Sec Opp, ECF No. 28, at 1).  He also claims that the Bank violated

my Policies and Procedures by not attempting to set up a discovery conference with me to

address the disputes.  (Pl.'s First Opp., ECF No. 21, at 6).  He cites *Casey v. Unitek Global

Servs., Inc.*, No.14-2671, 2015 WL 539623 (E.D. Pa. Feb. 9, 2015), as an example of a judge

within this district denying a motion for a protective order due to noncompliance with Local

Rule 26.1(f).  Citing *Get-a-Grip, II, Inc. v. Hornell Brewing Co., Inc.*, No. CIV A 99-1332, 1999

WL 1285825 (E.D. Pa. Dec. 21, 1999), the Bank counters that the movant need not submit a

certification where it nonetheless satisfies its duty to confer in good faith.  (Def.'s First Reply,

ECF No. 22, at 4).  It points to its prefiling correspondence with Sciore regarding the dispute,

including a suggestion from him that the Bank address any confidentiality objections by moving

for a protective order.  (*Id.* at 5; *see also* Def.'s May 27, 2021 Ltr., ECF No. 25-2).  Lastly, the

Bank distinguishes *Casey* and notes that my Policies and Procedures express a preference for written discovery motions.  (*Id.*).

The Bank is correct as to both Local Rule 26.1(f) and my Policies and Procedures.  In *Casey*, Judge Stengel denied the motion for a protective order not because it failed to include a certification of good faith attempts at resolution, but because it was "not possible that [the movants] attempted to resolve their dispute as to the scope of discovery" before filing in light of the fact that he had stayed discovery.  2015 WL 539623, at *6.  In *Get-a-Grip, II, Inc.*, Judge Rueter observed that a court may dismiss a motion for failure to attach the certification or it may excuse formal compliance with the requirement and address the motion, depending on the circumstances.  1999 WL 1285825, at *1 (citing *Lane v. ABS a/k/a Advanced Bldg. Sys., Inc.*, No. Civ.A. 98–1516, 1999 WL 820196, at *1 n.1 (E.D. Pa. Sept. 30, 1999); *Disantis v. Koolvent Aluminum Prods., Inc.*, No. CIV.A. 97–5434, 1998 WL 472753 (E.D. Pa. Aug. 12, 1998)).  In that case, Judge Rueter considered the merits of the motion notwithstanding the absence of a certification because the parties had exchanged letters in an attempt to resolve the dispute but had "reached an impasse . . . ." *Id.*

For similar reasons, I will overlook the Bank's failure to attach a certification that it undertook reasonable efforts to resolve this discovery dispute.  The record indicates that the parties exchanged three letters setting forth their respective positions as to the disputed First RFPs.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, Exs. C-E, ECF Nos. 20-3, 20-4, 20-5).  The Bank responded to the third letter, from Sciore to the Bank making certain concessions but reiterating the demand for the discovery now at issue in the first motion, by filing the motion. (Def.'s Memo. in Supp. of First Mot. for Pro. Order, Exs. E, ECF No. 20-5).  However, the fact that the Bank chose to move for a protective order rather than continue communications does not control my decision.  *See Get-a-Grip, II, Inc.*, 1999 WL 1285825, at *1 (noting the defendant's

belief "that efforts to resolve this dispute were continuing when plaintiff filed its motion").  The Bank had stated its position as to the remaining discovery, Sciore had renewed his demand for it, and the parties remained in disagreement.  *See id.*  Nothing indicates that further discussions would have proved fruitful at that point or would prove fruitful now.

Likewise, on May 27, 2021, before filing its second motion, the Bank wrote Sciore, advising that it objected to the Second RFPs in their entirety.  (Def.'s May 27, 2021 Ltr., ECF No. 25-2).  The Bank stated its intention to move for a protective order if the dispute was not resolved and requested a response by June 1.  (*Id.*).  Sciore never responded.  (Def.'s Memo. in Supp. of Sec. Mot. for Pro. Order, ECF No. 25).  Ironically, he now complains that the Bank failed to confer with him about the dispute when he ignored the Bank's request to engage in dialogue about the dispute.

Further, my Policies and Procedures do not require a party intending to file a discovery motion first to contact my chambers to schedule a conference with the Court.  Rather, they merely "permit[ ]" the would-be movant to do so.  (J. Sitarski's Policies and Procedures at 3).  They state that, ultimately, I "prefer[ ] to resolve discovery disputes by the use of written motions" – a fact that Sciore omits from his quotation of my Policies and Procedures as not "pertinent."  (*Id.*; Pl.'s First Opp. at 6).

As Judge Rueter concluded in *Get-a-Grip, II, LLC*, "[c]onsideration of the merits of the motion at this time may cause the remainder of discovery to proceed in an efficient and effective manner."  *Id.*  Accordingly, rather than require the parties to engage in additional discussions about this dispute, I will address the substantive arguments made in the parties' filings.[1]

---

[1]  Sciore also argues that the Court should deny the motion because the Bank has withheld documents as confidential rather than produce them under a confidentiality agreement. (Pl.'s First Opp., ECF No. 21, at 7; *see also* Pl.'s First Sur-reply, ECF No. 24, at 4).  Sciore cites no authority in support of this argument and does not explain why this fact should result in the complete denial of the Bank's motion.  (Pl.'s First Opp., ECF No. 21, at 7; *see also* Pl.'s First

### B.      First Motion for a Protective Order

In its first motion, the Bank seeks a protective order directing that it does not have to produce documents in response to four of Sciore's First RFPs and that it does not have to conduct a further search for documents in response to four others.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 6-13).  It argues that Sciore has failed to meet his threshold showing of relevance as to the former set of documents and that it has already performed a reasonable search as to the latter set.  (*Id.*; *see also* Def.'s First Reply, ECF No. 22, at 6).  Sciore argues that relevance is not a factor courts consider under *Glenmede/Pansy* and that "an alleged lack of relevance cannot serve as a substitute for the good cause" required for the issuance of a protective order.  (Pl.'s First Opp., ECF No. 21, at 6; Pl.'s First Sur-reply, ECF No. 24, at 4).  He contends that, in any event, the requests seek "information regarding revenue that the Bank realized as a result of Sciore's assistance" and are thus relevant to his damages.  (Pl.'s First Opp., ECF No. 21, at 6).  He claims that the motion fails to connect any of the *Glenmede/Pansy* factors to any serious, particularized injury and otherwise fails to establish good cause.  (*Id.* at 5).

### 1.      First RFP No. 7

First RFP number 7 requests:

> All financial documents relating to the Residential Mortgage Division's revenues, including, but not limited to:
>
> > a. Copies of all financial statements or financial records, including but not limited to Defendant's tax returns, profits and loss statements, revenue reports, income statements, balance sheets, ledgers, billing statements and accounting

Sur-reply, ECF No. 24, at 4).  As he acknowledges, it may prove possible to address confidentiality concerns by requiring production of documents pursuant to such an agreement. (Pl.'s First Sur-reply, ECF No. 24, at 4 (citing *Rifkin v. Fitness Int'l, LLC*, Nos. 19-cv-5686, 20-cv-4547, 2021 WL 1061211, at *5 (E.D. Pa. March 19, 2021))).  The Court will consider the propriety of doing so as it relates to the individual document requests at issue.

records which reflect any and all revenues related to the
Residential Mortgage Division from the date of the
Division's inception to the present.

(Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 7).

The Bank claims that in response to this RFP it produced internal financial records

showing the residential mortgage division's revenues over the last five years, but it otherwise

objects that the RFP seeks irrelevant information because Sciore has admitted that any services

he provided to the Bank constituted "a simple thank you gift" for the loans it had extended to

him and his related entities.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at

6).  The Bank also argues that Sciore has failed to carry his burden of demonstrating "a

compelling need exists for the tax returns" because it posts much of the information contained

therein on its website.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 7

(quoting *Haas v. Kohl's Dep't Store, Inc.*, No. 08-CV-2507, 2009 WL 2030567, at *1 (E.D. Pa.

July 7, 2009))).  The Bank points out that the Court must balance its expectation of privacy in

these confidential and sensitive materials with the interest in permitting liberal discovery.  (*Id.*

(quoting *Haas*, 2009 WL 2030567, at *1)).  Additionally, it observes that the returns "contain a

substantial amount of information that is entirely unrelated to the Bank's residential mortgage

division."  (*Id.*).

Sciore responds that the produced financial records consist of six pages in total and only

one page relating to the residential mortgage division's revenues.  (Pl.'s First Opp., ECF No. 21,

at 8).  He asserts that the requested documents are plainly relevant because the crux of his

allegations "is that the Bank's financial success was a result of Plaintiff's assistance."  (*Id.*).  He

rejects the Bank's counter-assertion that the documents are irrelevant in light of his "thank you

gift" email as an improper foray into the merits of his underlying claim.  (*Id.*).  He maintains that

even if the documents were irrelevant, "an alleged lack of relevance is not sufficient grounds for

a protective order . . . ." (*Id.*).  He distinguishes *Haas* and the case it cites, *DeMasi v. Weiss*, 669 F.2d 114 (3d Cir. 1992), on the basis that they involved individual rather than business returns, but agrees with the application of *Haas*'s two-part test requiring consideration of the information's relevance and availability elsewhere.  (*Id.* at 9 (citations omitted)).  He asserts that application of this test should result in disclosure in this case because the returns are relevant and the Bank has not demonstrated that the information contained therein is available from other sources.  (*Id.*).

In reply, the Bank restates its position that First RFP number 7 is overbroad, unduly burdensome and seeks confidential information, "the disclosure of which would put the Bank at a severe competitive disadvantage."  (Def.'s First Reply, ECF No. 22, at 7).  It also argues that requiring it to "search for, analyze, and produce a mountain of commercially sensitive internal financial information" is disproportionate to the needs of this case.  (*Id.*).  It claims that the financial records it produced suffice to provide Sciore with the information he seeks, but if he believes he requires more, "most of the Bank's financials are available to him **for free on the Bank's website**, which contains each of the Bank's annual reports, SEC filings, and financial statements."  (*Id.* (emphasis in original)).  Thus, under *Haas*, it has no obligation to produce its tax returns to him.  (*See id.*).

Preliminarily, the Court rejects arguments made by each party.  Sciore is incorrect that the relevance of the information sought does not factor into the propriety of issuing a protective order.  (Pl.'s First Opp., ECF No. 21, at 8).  Because "the party seeking discovery must first demonstrate relevance before the party seeking a protective order must demonstrate good cause," a party is not required to produce irrelevant information.  *Bell*, 270 F.R.D. at 195.  Nonetheless, First RFP number 7 does not seek irrelevant information, contrary to the Bank's argument.  The gist of Sciore's allegations is that he unjustly enriched the Bank when he helped it to develop its

residential mortgage division and recruited loan officers to work there but the Bank did not compensate him for his efforts.  (Compl., ECF No. 1-15, at ¶¶ 13-30).  First RFP number 7 seeks tax returns and other documents containing financial information that may assist him to establish and value his damages, if any.  To find this RFP improper on the basis of Sciore's "thank you gift" email would require the Court, in effect, to review the merits of the parties' claims and defenses and determine their validity.  This task is not before me at this time.[2]

The parties agree that the two-part test discussed in *Haas* governs the discoverability of the tax returns.  In *Haas*, Judge Tucker explained:

> Courts have applied a two-part test for striking a balance between these two interests by first determining the relevance of the tax returns to the litigation.  If the returns are determined to be relevant, the second consideration is whether a compelling need exists for the tax returns because of the lack of information available from other sources.  The party seeking the information bears the burden of proving such unavailability of resources.

2009 WL 2030567, at *1 (citing *Fort Wash. Res., Inc. v. Tannen*, 153 F.R.D. 78, 80 (E.D. Pa. 1994); *Terlescki v. E.I. DuPont De Nemours & Co.*, No. 90-6854, 1992 WL 75015 (E.D. Pa. 1992)).  Having already established the relevance of the tax returns, the Court considers whether Sciore has carried his burden of demonstrating a compelling need due to the absence of the sought-after information elsewhere.

---

[2]  When ruling on a discovery motion, courts take the facts pled in the complaint as true. *Venneman v. BMW Fin. Servs. NA, LLC*, No. 2:09–CV–5672–ES–SCM, 2013 WL 3188878, at 1 & n.1 (D.N.J. June 21, 2013) (observing in an opinion on a motion for a protective order that "[a]t this stage of the proceedings we are required to accept the facts alleged in the Amended Complaint as true," even with a separately pending motion for summary judgment); *see also Maximum Human Performance, LLC v. Sigma-Tau HealthScience, LLC*, No. 12–cv–6526–ES–SCM, 2013 WL 4537790, at 1 n.1 (D.N.J. Aug. 27, 2013) (observing the same in an opinion on a motion to compel discovery).  Accordingly, for present purposes only, the Court accepts as true Sciore's averments, including his contention that he provided assistance to the Bank with the expectation of compensation.

The Bank directs Sciore and the Court to its website, where it makes various financial documents available to the public at no cost.  (Def.'s First Reply, ECF No. 22, at 7 (citing https://investors.centricbank.com/corporateinformation/CorporateProfile/default.aspx)).  The website provides links to, *inter alia*, the Bank's quarterly and annual financial reports and stand-alone balance sheets.[3]  These documents appear to contain much of the information requested by Sciore in First RFP number 7.[4]  Sciore does not address the availability of these documents and offers no explanation as to what information the Bank's tax returns contain but that its publicly available documents and the documents already provided do not.  Because Sciore carries the burden of demonstrating that the desired information is only available in the tax returns, the Court shall grant the Bank's motion and issue a protective order as to the returns requested in First RFP number 7.  *See Haas*, 2009 WL 2030567, at *1.

To determine whether the Bank must disclose financial documents and, if so, what limitations should apply, the Court applies the *Glenmede/Pansy* factors.  *Glenmede Tr. Co.*, 56 F.3d at 483 (citing *Pansy*, 23 F.3d at 787-91).  Specifically, Sciore seeks "profits and loss statements, revenue reports, income statements, balance sheets, ledgers, billing statements and accounting records . . . ."  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 7).  As an initial matter, to the extent that Sciore seeks documents concerning the accounts of individual borrowers – such as borrowers' billing statements or similar

---

[3]  Centric Financial Corporation, Investor Relations Documents, https://investors.centricbank.com/filings/Docs/default.aspx; Centric Financial Corporation, Balance Sheet, https://investors.centricbank.com/financials/AsReported/default.aspx.

[4]  *See* Centric Financial Corporation, Shareholder Report First Quarter 2020, https://s25.q4cdn.com/132792886/files/doc_downloads/sec/58941275.pdf; Centric Financial Corporation, Annual Report 2020, https://s25.q4cdn.com/132792886/files/doc_financials/2020/ar/Centric2020AnnualReportFINAL.pdf.

accounting records – the Court finds good cause exists to issue a protective order prohibiting

such disclosure.  Disclosure would violate borrowers' legitimate and significant privacy interests

in their mortgage account information, would prove grossly unfair to these nonparties, and could

embarrass individual borrowers.  Further, Sciore has no legitimate purpose for this information,

and the sharing of this information would not promote efficiency.  Sciore can obtain the

information needed to value his claim more effectively from aggregate information maintained

by the Bank.  *See* FED. R. CIV. P. 26(b)(2)(C)(i) (the court "must limit the . . . extent of

discovery" that "is unreasonably cumulative or duplicative, or can be obtained from some other

source that is more convenient, less burdensome, or less expensive").  Given the intensely

private nature of this information, none of the public factors counsel in favor of its disclosure

either.

As to the aggregate information for the residential mortgage division, the Bank

undoubtedly has a legitimate privacy interest as well.  However, the Bank's privacy interests can

be protected by limiting disclosure of the financial documents, as set forth below.  The Bank

repeatedly argues that Sciore has no legitimate purpose for these documents because his claims

lack merit, but, as noted, this argument is not a basis to deny Sciore discovery.  (Def.'s Memo. in

Supp. of First Mot. for Pro. Order, ECF No. 20, at 6-7).  Given the allegations in this case, the

requested financial documents will serve the legitimate purpose of allowing Sciore to establish

his damages, if any, on his claim that his assistance helped to build the Bank's residential

mortgage division.  Therefore, disclosure will also promote fairness and efficiency among the

parties by providing Sciore key documents necessary to substantiate any damages he may have.

In addition, the Bank does not, and likely could not, claim that disclosure of its financial

information will embarrass it, and in any event this concern can also be addressed by placing

limitations on the disclosure.  *See Pansy*, 23 F.3d at 787 ("As embarrassment is usually thought

of as a nonmonetizable harm to individuals, it may be especially difficult for a business

enterprise, whose primary measure of well-being is presumably monetizable, to argue for a

protective order on this ground.") (citing *Cipollone*, 785 F.2d at 1121).

Consideration of these factors compels me to conclude that the Bank has not established

good cause for an order protecting it from turning over documents reflecting aggregated financial

information of the residential mortgage division.  Nonetheless, consideration of the remaining

public factors convinces me that this disclosure must be subject to certain limitations.  The

financial information of the Bank, a private entity, is not important to public health and safety,

nor does the case involve issues particularly important to the public.  *See Glenmede Tr. Co.*, 56

F.3d at 483.  In light of the private nature of the parties' dispute, all public "factor[s] weigh[ ] in

favor of granting . . . an order of confidentiality."  *Pansy*, 23 F.3d at 787-88 (citing *FTC v.

Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987)).  Accordingly, the Bank's

production of these financial documents shall be subject to the entry of a stipulated

confidentiality order, to be submitted by the parties within 7 days of the date of this

memorandum and accompanying order.  In addition, in light of the fact that Sciore has over 15

years of experience in the mortgage industry and operates a capital investment firm, and, as such,

disclosure of the documents to him may "put the Bank at a severe competitive disadvantage," the

Bank may limit disclosure to his attorneys by marking the documents "Attorneys' Eyes Only."

 (Def.'s First Reply, ECF No. 22, at 7; Def.'s Sec. Reply, ECF No. 25, at 7, Ex. D; *see also

Mains v. Sherwin-Williams Co.*, No. 5:20-cv-00112-JMG, 2021 WL 1298237, at *2 (E.D. Pa.

Apr. 7, 2021) ("Protective orders that allow for 'attorneys' eyes only' designations have been

utilized often in circumstances where the requesting party could use the information to the

disadvantage of the disclosing party.") (quoting *Deman Data Sys., LLC v. Schessel*, No. 4:13-mc-00520, 2014 WL 204248, at *4 (M.D. Pa. Jan. 16, 2014))).[5]

  **2.     First RFP No. 8**

First RFP number 8 requests: "All Communications and Documents relating to Christopher Bickel's employment with Defendant, including, but not limited to: the circumstances by which Bickel began employment with Defendant, his title(s), period(s) of employment, and the amount of revenue that Bickel has generated on behalf of Defendant during his employment." (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 8). Although the Bank produced documents in response to similar requests regarding Joseph Bell and Anthony Panto, it objected to RFP number 8 "on the basis that it improperly calls for the production of confidential and personal information of a non-residential mortgage loan officer and thus is outside the scope of the claims raised in Plaintiff's Complaint, to wit: that he allegedly provided assistance to Defendant's residential mortgage loan department."[6] (*Id.* at RFP Nos. 8-10).

According to the Bank, documents pertaining to Bickel are irrelevant because he never worked in the residential mortgage division. (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 8). It contends that Sciore's request for Bickel's employment file is no different from the subpoena for an employment file that I quashed in *Saller v. QVC, Inc.*, No. 15-2279, 2016 WL 8716270 (E.D. Pa. June 24, 2016). (Def.'s Memo. in Supp. of First Mot. for

---

  [5] As is also common practice, the confidentiality order shall contain provisions regarding how the opposing party can challenge the designation and file the information with the Court, as needed. *See Deman Data Sys., LLC*, 2014 WL 204248, at *5.

  [6] Notwithstanding the Bank's objection, it provided Bickel's title and indicated that he continues to work for it. (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 8).

Pro. Order, ECF No. 20, at 8-9).  It argues that requests for entire employment files are overbroad, especially where the employee is not a party.  (*Id.* (citing *Saller*, 2016 WL 8716270, at *4)).  Lastly, the Bank claims that it has demonstrated good cause for a protective order because Sciore has no legitimate purpose for the materials and because disclosure would violate Bickel's privacy interests and be unfair to the Bank in light of Sciore's acknowledgment that he intended his services only as "a simple thank you gift" to the Bank.  (*Id.* at 9; Def.'s First Reply, ECF No. 22, at 8-9 & n.2 (citing *Boykins v. inVentive Com. Servs., L.L.C.*, No. 11–7354, 2014 WL 413538 (D.N.J. Feb. 4, 2014))).  Sciore responds that he seeks only documents regarding "the circumstances of Bickel's hiring" and "the revenues Bickel has earned the Bank," not his entire employment file.  (Pl.'s First Opp., ECF No. 21, at 10).  He asserts that these documents are relevant in light of his allegations "that he 1) assisted the Bank in recruiting Bickel as an employee and 2) in turn, Bickel generated significant revenue for the Bank (not the Residential Mortgage Division) subsequent to his hiring."  (*Id.*).  He contends that the Bank has failed to demonstrate good cause for a protective order.  (*Id.*).

As I observed in *Saller*, "[c]ourts have routinely found blanket requests for a plaintiff's entire personnel or employment file to be impermissibly broad."  2016 WL 8716270, at *4.  However, in his opposition brief, Sciore clarifies that he seeks only documents related to Bickel's hiring by the Bank and any revenues he has generated for it, not Bickel's entire employment file.  (Pl.'s First Opp., ECF No. 21, at 10).  Thus, Sciore's request for documents is more like the subpoenas upheld in *Zeller v. South Central Emergency Medical Services, Inc.*, No. 1:13-CV-2584, 2014 WL 2094340 (M.D. Pa. May 20, 2014), cited in *Saller*, than the ones rejected in *Boykins*, also cited in *Saller*, or in *Saller* itself.  *Compare Saller*, 2016 WL 8716270, at *4 (relying upon *Boykins*, distinguishing *Zeller* and requiring the defendant to modify its subpoenas for the plaintiff's entire employment files), *and Boykins*, 2014 WL 413538, at *2

("Defendants' request for Plaintiff's entire . . . personnel file is overly broad . . . ."), *with Zeller*, 2014 WL 2094340, at *6 (denying the plaintiff's motion for a protective order and to quash broad subpoenas to his prospective employers after the defendants proposed narrowing the scope to seek "specific documents"[7] relevant to damages, and distinguishing *Boykins* on the basis that in that case the defendant sought the employee's "entire file").

Nor does Sciore's narrowed request seek irrelevant documents because Bickel works for the Bank other than in its residential mortgage division.  Sciore's claim as to the recruitment of Bickel does not necessarily depend on the division in which he ultimately ended up.  The fact that the Bank placed Bickel in a division other than that for which Sciore recruited him does not defeat his claim or render Bickel's employment irrelevant.  Further, even assuming *arguendo* that the complaint misstates the division in which Bickel works, "parties can always amend to conform to the evidence, even during or after trial."  *Greygor v. Wexford Health Sources, Inc.*, No. 2:14-cv-1254, 2016 WL 772740, at *4 (W.D. Pa. Feb. 7, 2016) (citing *Werner v. Werner*, 267 F.3d 288, 297 (3d Cir. 2001) (additional citations omitted)).

The Bank has not demonstrated good cause for a protective order pursuant to the *Glenmede/Pansy* factors.  Although the Court agrees with the Bank that Bickel has a privacy

---

[7]  In fact, even the narrowed subpoena in *Zeller* appears to have sought a greater array of documents than Sciore's narrowed request seeks.  2014 WL 2094340, at *4.  It demanded:

> All handwritten, typewritten and/or electronic documents, correspondence, writings, notes, interviews, declarations, articles, transcripts, resumes, job postings, employment opportunities, recruiter communications, curriculum vitae, employment applications, references, letters of recommendation, background checks, compensation requirements, offers of employment, withdrawal of offers of employment, rejection of offers of employment, and/or other tangible or intangible items related to Richard Zeller.

*Id.*

interest in the documents requested, disclosure of two discrete categories of documents – those regarding his hiring and any revenue he has generated – does not raise the same level of concern as disclosure of an entire employment file, like in *Boykins*.  *See* 2014 WL 413538, at *2 ("overly broad" request for "entire . . . personnel file . . . intrude[d] into Plaintiff's recognized privacy interests").  Moreover, the privacy of the documents can be protected by making their disclosure subject to the aforementioned confidentiality order.  Further, Sciore's use of the documents to attempt to establish liability and damages is a legitimate purpose.  *See Glenmede Tr. Co.*, 56 F.3d at 483.  The Bank does not suggest disclosure will prove embarrassing to either Bickel or itself, and its contention that disclosure is unfair because Sciore's claim is baseless requires a determination on the merits that the Court cannot make at this time.  *See id.*  In addition, consideration of the public factors supports the Court's conclusion that a confidentiality order is warranted.  The financial information of the Bank, a private entity, is not important to public health and safety, nor does the case involve issues particularly important to the public.  *See Glenmede Tr. Co.*, 56 F.3d at 483.  In light of the private nature of the parties' dispute, all public "factor[s] weigh[ ] in favor of granting . . . an order of confidentiality."  *Pansy*, 23 F.3d at 787-88.  Documents regarding the hiring of and any revenue generated by Bickel, a private individual, has no bearing on public health and safety, just as the case as a whole is not important to the public.  *See Glenmede Tr. Co.*, 56 F.3d at 483.

Accordingly, the Court shall deny the Bank's motion for a protective order as to First RFP number 8, based upon Sciore's representation that it only seeks documents relating to Bickel's hiring and any revenues generated by him.  However, the Bank's production of these documents shall be subject to the entry of the stipulated confidentiality order discussed in the preceding section.  In addition, the Bank may designate documents pertaining to the revenues generated by Bickel "Attorneys' Eyes Only," as appropriate.

### 3.     First RFP Nos. 14, 27, 28 and 29

First RFP numbers 14, 27, 28 and 29 request communications involving Bank employees relating to the assistance Sciore allegedly provided the Bank.  First RFP number 14 requests communications and documents between Plaintiff and Bank employees regarding the residential mortgage division.  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 14).  First RFP number 27 requests: "All Communications and Documents to, from or exchanged between Chris Bickel, Terry Monteverde, Sascha Leftault, Don Bonafede, and/or Patricia Husic relating to or regarding both the Residential Mortgage Division and Plaintiff." (*Id.* at RFP No. 27).  First RFP number 28 requests communications and documents exchanged between these individuals "regarding both 1) Plaintiff and 2) the Bank's recruitment and/or hiring of employees and/or independent contractors."  (*Id.* at RFP No. 28).  First RFP number 29 requests communications between Sciore and Husic regarding the residential mortgage division. (*Id.* at RFP No. 29).

The Bank produced 345 pages of documents in response to First RFP number 14.  (*Id.* at RFP No. 14).  As it did for its other responses to First RFPs for which it produced documents, the Bank "expressly reserve[d] the right to supplement its response to RFPD No. 14 based on subsequently obtained documents responsive to this request."  (*Id.*).  The Bank responded to First RFP numbers 27 through 29 by referring Sciore to its response to First RFP number 14.  (*Id.* at RFP Nos. 27-29).  Sciore responded to the Bank's written responses, dated March 5, 2021, with an April 2, 2021 letter demanding, *inter alia*, that the Bank supplement its production with additional communications requested in these RFPs.  (Pl.'s Apr. 2, 2021 Ltr., ECF No. 20-3, at 3).  The Bank countered the same day that it had "produced the documents it could locate after reasonable investigation of its ESI, including relevant email mailboxes and cell phones."  (Def.'s Apr. 2, 2021 Ltr., ECF No. 20-4, at 2).  Nonetheless, the Bank promised to "review [the] alleged

'deficiencies' and see if there are any other documents responsive to [Sciore's] discovery requests that can be located." (*Id.*). By letter dated April 14, 2021, Sciore withdrew certain components of the RFPs, primarily involving communications with Monteverde and Lefteault, but reiterated that "[t]he remainder of these Requests still stand." (Apr. 14, 2021 Ltr., ECF No. 20-5, at 1).

In its motion, the Bank observes that Sciore identifies no specific deficiency with its responses or production. (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 11). It questions what else it could have done other than that which it did, namely, to conduct a reasonable search, produce responsive documents, and acknowledge its continuing duty to supplement with any additional responsive documents that it uncovers. (*Id.* at 10-11). Sciore complains that "instead of providing a date for provision of supplementary responses, the Bank now seeks a protective order with regard to these responses." (Pl.'s First Opp., ECF No. 21, at 11). It accuses the Bank of "reneg[ing] on its promise to supplement the Responses to include all responsive documents." (*Id.*).

As the Bank points out in its reply, Sciore misunderstands the Bank's representations regarding the production of additional documents responsive to RFP numbers 14 and 27 through 29. (*See* Def.'s First Reply, ECF No. 22, at 9-10 ("[T]he undersigned merely acknowledged Plaintiff's position and agreed to see whether the Bank has any additional responsive documents. After a reasonably diligent search, the Bank has not identified any other responsive documents, so there is nothing to produce.")). Nowhere did the Bank indicate that it had documents beyond those that it had produced or that it would produce at a later date. Sciore acknowledges that the Bank produced documents responsive to the RFPs, and he provides no basis to suggest that the Bank is improperly withholding additional responsive documents. In short, Sciore simply assumes that such documents must exist, but his assumptions do not suffice to force a further

response from the Bank.  *See, e.g., Margel v. E.G.L. Gem Lab Ltd.*, No. 04-1514, 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . . .") (quotation omitted); *U.S. v. O'Keefe*, 537 F. Supp. 2d 14, 22 (D.D.C. 2008) ("vague notions that there should have been more than what was produced are speculative" and an inadequate basis to compel further efforts by the producing party) (citation omitted); *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992) ("In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion.") (citation omitted).

Nonetheless, the Bank has not demonstrated "a particular need for protection" justifying a protective order. *Cipollone*, 785 F.2d at 1121.  It suffices that the Court notes the Bank's representation that it has produced all responsive documents located and its acknowledgement that it must produce any responsive documents that it locates in the future.  The Bank has no further obligation to produce additional documents at this time.  Because First RFP numbers 14, 27, 28 and 29 have been addressed and are no longer pending, the Court will deny the Bank's motion for a protective order as to them as moot.

### 4.     First RFP No. 23

First RFP number 23 requests: "All Communications and Documents supporting any damages claims asserted in this action."  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 23).  The Bank answered this RFP by indicating that it asserts no damages claims.  (*Id.*).  Plaintiff responded by advising the Bank that the RFP referred to Sciore's damages.  (Pl.'s Apr. 2, 2021 Ltr., ECF No. 20-3, at 3-4).  In its briefing, the Bank argues that requiring it to produce documentation of Sciore's alleged damages is impossible

because it asserts that Sciore has no damages.  (Def.'s Memo. in Supp. of First Mot. for Pro.

Order, ECF No. 20, at 11).  It contends that the RFP also impermissibly seeks attorney work

product because the selection of documents for production would necessarily require counsel to

disclose their beliefs about the makeup and value of Sciore's claims.  (*Id.* at 12).  The Bank

further observes that First RFP number 23 duplicates other of Sciore's RFPs seeking documents

relating to the factual bases for his alleged damages.  (Def.'s First Reply, ECF No. 22, at 11).  In

his response, Sciore calls the Bank's answer to the RFP "disingenuous" and notes that "the

Complaint puts the Bank on notice of Sciore's damages, namely the Bank's failure to

compensate him for assisting the Bank with development of the Residential Mortgage Division

and employee recruitment . . . ."  (Pl.'s First Opp., ECF No. 21, at 12).  In addition, it claims that

the Bank's "unilateral legal interpretations and merits-based arguments . . . are misplaced at this

juncture . . . ."  (*Id.*).

I agree with the Bank that First RFP number 23 merely repeats other RFPs issued by

Sciore.  Federal Rule of 26(b)(2)(C)(i) permits me, upon a party's motion or of my own accord,

to limit the extent of discovery "if the discovery sought is unreasonably cumulative or

duplicative . . . ."  FED. R. CIV. P. 26(b)(2)(C)(i).  Here, Sciore seeks payment for his alleged

services in developing the Bank's residential mortgage division and recruiting Bickel, Bell, and

Panto to work at the Bank.  (Pl.'s First Opp., ECF No. 21, at 12; *see also* Compl., ECF No. 1-15,

at ¶¶ 13-30).  In attempting to establish the value of these services, he served First RFP number

7, seeking financial documents pertaining to the division's revenues and First RFP numbers 8, 9,

and 10, seeking communications and documents relating to the Bank's employment of Bickel,

Bell, and Panto.  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at

RFP Nos. 7-10).  His First RFP number 23 demand for all documents "supporting [his]

damages" is subsumed by, and thus cumulative and duplicative of, First RFP numbers 7 through

10 because his alleged damages are comprised only of the services he rendered in developing the residential mortgage division and recruiting the three individuals.  In other words, the documents he seeks in First RFP number 23 mirror those he seeks in First RFP numbers 7, 8 and 9.  Because further response from the Bank would serve no purpose, I shall grant its motion as to First RFP number 23.

### 5.     First RFP No. 30

First RFP number 30 requests any Bank board meeting minutes that refer to the residential mortgage division.  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 30).  The Bank argues that this request is overbroad and unduly burdensome and seeks irrelevant and confidential information.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 12).  It notes that the residential mortgage division precedes Sciore's involvement with the Bank and that the minutes "are extremely sensitive and set forth the Bank's business strategy."  (Def.'s First Reply, ECF No. 22, at 11).  It contends that its "Board-level discussions concerning an entire division" are not "relevant to Plaintiff's specific claims."  (*Id.*)  It posits that a protective order is warranted under *Glenmede/Pansy* because production would not "promote fairness and efficiency" and because the matter does not involve the public interest or a public figure.  (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 13).  Sciore counters that First RFP number 30 "is narrowly tailored to discover[ ] only those minutes that pertain to the Residential Mortgage Division, which are absolutely relevant to Sciore's claim that he played a substantial role in the growth and financial success of the Residential Mortgage Division."  (Pl.'s First Opp., ECF No. 21, at 12).  It further asserts that the Bank can address its privacy concerns by entering a confidentiality agreement with Sciore as to the minutes.  (*Id.* at 12-13).

Relevant, nonprivileged organizational minutes are normally discoverable. *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 195 (E.D. Pa. 2004) (denying a motion for a protective order as to board minutes containing potentially relevant information); *Kopacz v. Del. R. & Bay Auth.*, 225 F.R.D. 494, 497-98 (D.N.J. 2004) (granting a motion to compel as to committee minutes containing potentially relevant information); *In re Atl. Fin. Fed. Sec. Litig.*, No.89-0645, 1991 WL 153075, at *3 (E.D. Pa. Aug. 6, 1991) (granting a motion to compel as to committee minutes containing potentially relevant information); *cf. Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 140 (W.D. Pa. 1993) (denying a motion to compel board minutes protected by the attorney-client privilege). Here, board minutes concerning the residential mortgage division, which Sciore alleges he helped to develop, may prove relevant to his claim and, if he should prevail, his damages. Although the Bank contends that the minutes are confidential, it does not assert a privilege over them. As Sciore suggests, the Bank's concerns may be addressed through the agreement of the parties to maintain the confidentiality of the documents. The Court further finds that it is possible to address the Bank's objections regarding overbreadth and burden by permitting the Bank to produce only the minutes for the period that Sciore allegedly participated in the development of the residential mortgage division and to redact those portions of the minutes concerning matters unrelated to the division. *See Zeller*, 2014 WL 2094340, at *2 (the court has authority to fashion relief to protect privacy).

Consideration of the factors set forth in *Glenmede/Pansy* counsels against finding good cause for a protective order. Although disclosure of the board minutes implicates the Bank's privacy interests, the Court disagrees with it that "fairness and efficiency" and the lack of public interest in the matter constitute good cause. (Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 13). Again, the Court does not consider the Bank's merits-based contention that production of the minutes is unfair because Sciore has admitted that his services constituted a

"thank you gift" to the Bank.  (*See id.*).  As noted, Sciore seeks the minutes to establish the

Bank's liability and his damages, which is a "legitimate" rather than "improper purpose" in the

litigation.  *See Glenmede Tr. Co.*, 56 F.3d at 483.  Viewed in this light, "fairness" dictates that he

receive them.  The Bank asserts that the minutes contain "sensitive, proprietary information" –

an issue that shall be addressed by maintaining the minutes' confidentiality – but it does not

contend that disclosure of the minutes to Sciore and his attorneys will cause the Bank any

embarrassment.  Further, the Court rejects the Bank's invitation to grant it a protective order

because "this matter does not involve a question of public interest or a public figure . . . ."

(Def.'s Memo. in Supp. of First Mot. for Pro. Order, ECF No. 20, at 13).  Consideration of

public factors supports the conclusion that a confidentiality order is warranted to protect the

privacy of this information.  *See Pansy*, 23 F.3d at 787-88.

For these reasons, the Court shall deny the Bank's motion for a protective order as to

First RFP number 30, subject to the limitation that only minutes relating to the residential

mortgage division for the period that Sciore allegedly participated in the development of that

division are discoverable.  Further, the Bank's production of minutes shall be subject to the entry

of a stipulated confidentiality order and, as appropriate, designations limiting disclosure to

"Attorneys' Eyes Only."

### C.     Second Motion for a Protective Order

In its second motion, the Bank complains that Sciore's Second RFPs merely duplicate his

First RFPs, which, according to the Bank, also sought irrelevant information.  (Def.'s Memo. in

Supp. of Sec. Mot. for Pro. Order, ECF No. 25, at 2, 5-8).  It argues that Sciore seeks the

documents at issue only to compete with and harass it.  (*Id.* at 2).  Sciore responds that the Bank

fails to address the *Glenmede/Pansy* factors and that a protective order is not warranted on the

basis that a discovery request duplicates an earlier request.  (Pl.'s Sec. Opp., ECF No. 28, at 3).

He denies that the Second RFPs duplicate the prior RFPs and observes that, in any event, the Bank refused to produce documents in response to several of the First RFPs.  (*Id.* at 4).  He contends that the Second RFPs seek "information regarding revenue that the Bank realized as a result of [his] assistance, [which] strikes at the heart of this action and is entirely discoverable." (*Id.*).  He claims that the Bank has failed to demonstrate any particularized harm that would result from responding to the Second RFPs.  (*Id.*).  The Bank replies that under Rule 26(c) the Court has the authority to enter an order protecting a party from having to respond to duplicative discovery requests, particularly where, as the Bank asserts is the case here, the requests also seek irrelevant information.  (Def.'s Sec. Reply, ECF No. 29, at 3).  It asserts that production of the requested documents would harm it by forcing it to turn over customer information and proprietary loan underwriting methods and criteria to a potential competitor.  (*Id.* at 4).

The Court disagrees with Sciore that it lacks the authority to enter an order protecting the Bank from duplicative discovery requests.  As noted, under Federal Rule of Civil Procedure 26(b)(2)(C)(i), "[o]n motion or on its own, the court ***must*** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . . ."  FED. R. CIV. P. 26(b)(2)(C)(i) (emphasis added).  Further, as the Bank notes, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, . . . oppression, or undue burden or expense . . . ."  FED. R. CIV. P. 26(c)(1).  Consequently, the Court will consider, in addition to the other relevant considerations identified by the parties, whether individual or related Second RFPs duplicate earlier First RFPs.

### 1.      Second RFP Numbers 1, 2 and 4

Second RFP numbers 1, 2 and 4 seek the Bank's filings with, respectively, the Financial Industry Regulatory Authority (FINRA), the Securities and Exchange Commission (SEC) or

"any other regulatory body," and the Federal Financial Institutions Examinations Counsel (FFIEC).  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 1, 2, 4).  The Bank contends that these RFPs seek irrelevant documents that do not relate to Sciore's claim that he assisted the Bank in recruiting three employees and developing its residential mortgage division and, further, that they duplicate unspecified First RFPs.  (Def.'s Memo. in Supp. of Sec. Mot. for Pro. Order, ECF No. 25, at 2, 6-7).  Sciore responds that Second RFPs 1, 2 and 4 seek relevant documents that "will shed light on Centric's revenues, which form a key pillar of Sciore's damages theory." (Pl.'s Sec. Opp., ECF No. 28, at 5).  It also argues that the First RFPs requested only the Bank's SEC filings, not filings with the other entities.  (Pl.'s Sec. Opp., ECF No. 28, at 5).

The Court agrees with Sciore that, depending on the financial information contained in these filings, the requested documents may prove relevant to his alleged damages.  Notably, when the Bank responded to First RFP number 5 requesting the Bank's SEC filings, it did not object on relevance (or any other) grounds.  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 5).  Rather, the Bank responded that it had no such documents because it does not file with the SEC.  (*Id.*).  Further, although First RFP number 5 requested SEC filings, Second RFP number 2 is not duplicative insofar as it also requests the Bank's filings with "any other regulatory body."  (*Id.*; Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP No. 2). Moreover, none of the First RFPs requested the Bank's FINRA or FFIEC filings, as requested in Second RFP numbers 1 and 4.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 1, 4; *see generally* Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2).

Second RFP numbers 1, 2 and 4 do not seek irrelevant information, nor do they duplicate any of the First RFPs, with the exception of the limited overlap between First RFP number 5 and Second RFP number 2 to the extent that both request the Bank's SEC filings.  Accordingly, the Court denies the Bank's motion for a protective order as to Second RFPs 1, 2 and 4, subject to

the limitation that the production of the requested documents shall be subject to the entry of a stipulated confidentiality order and marked "Attorneys' Eyes Only" as needed.

      **2.**      **Second RFP Numbers 3 and 24**

Second RFP number 3 requests "[a]ll internal financial statements" of the Bank since 2015.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP No. 3).  Second RFP number 24 requests documents and communications regarding "costs and expenses the Bank incurred in connection with the Residential Mortgage Division" since 2015.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP No. 24).

As explained in section III.B.1 regarding First RFP number 7, which also requested financial statements,[8] these documents, insofar as they relate to the residential mortgage division, are relevant to Sciore's allegations that he unjustly enriched the Bank by helping it to establish the division and recruiting loan officers to work there.  (Compl., ECF No. 1-15, at ¶¶ 13-30; *see also infra* § III.B.1).  First RFP number 24 is properly limited to documents concerning the residential mortgage division, but number 3 seeks "all" of the Bank's internal financial statements, without any similar limitation.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 3, 24).  Because the Bank's financial statements relating exclusively to other divisions are not relevant, it need not produce any such documents.

---

[8] First RFP number 7 was limited to financial statements regarding the residential mortgage division's "revenues," whereas Second RFP number 3 does not include this limitation. (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 7; Second Set of RFPs, ECF No. 25-3, at RFP No. 3).  Further, although First RFP number 7 requested the division's profit and loss statements, it did not request documents relating exclusively to its "costs and expenses," as encompassed by Second RFP number 24.  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 7; Second Set of RFPs, ECF No. 25-3, at RFP No. 24).  Although First RFP number 7 is not entirely coextensive with these Second RFPs, the Bank obviously need not reproduce any documents produced previously in response to First RFP number 7.

However, as also addressed in section III.B.1, the Bank has otherwise not shown good cause under *Glenmede/Pansy* why it should not have to produce financial statements.  In short, the Bank's legitimate privacy interests in the statements can be protected by producing them as "Attorneys' Eyes Only" and pursuant to a confidentiality order, which is appropriate given that this dispute does not involve matters of particular public concern or public entities or figures.  In addition, there is no indication that limited disclosure to Sciore will embarrass the Bank, but it will promote fairness and efficiency by providing him aggregated financial information to carry out the legitimate purpose of attempting to substantiate his damages.

Accordingly, the Bank's request for a protective order is granted only as to requested documents that do not relate to the residential mortgage division or that have already been produced.  It shall produce any unproduced documents relating to the residential mortgage division and responsive to Second RFP numbers 3 and 24, subject to the entry of the stipulated confidentiality order described above.

### 3.      Second RFP Number 5

Second RFP number 5 requests communications between Husic and the Bank's board members between 2015 and 2018 regarding the residential mortgage division.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP No. 5).  The Court's analysis of this RFP is similar to that for First RFP number 30, requesting board meeting minutes, in section III.B.5.  (*See supra* § III.B.5).  Communications between Husic and board members regarding the residential mortgage division may prove relevant to Sciore's claim that he helped develop the division.  Although the Bank has a privacy interest in these communications, Sciore's use of them to attempt to establish his claim is a legitimate purpose.  Fairness to Sciore and efficient discovery dictate that he receive these communications among the Bank's decisionmakers.  Accordingly, the Bank has failed to demonstrate good cause for a protective order under *Glenmede/Pansy*.  However, good

cause does exist for a confidentiality order because this case does not involve public health and safety, other important public issues, or public entities and figures.

Accordingly, the Court denies the Bank's motion for a protective order as to Second RFP number 5, subject to the limitation that the production of the requested documents shall be subject to the entry of a stipulated confidentiality order and marked "Attorneys' Eyes Only" as needed.

### 4.      Second RFP Numbers 6 through 10, 14, 16 and 21 through 23

Second RFP numbers 6 through 10, 22 and 23 request various documents related to the Bank's alleged activities in the secondary mortgage market: investor agreements and score cards, mortgage sale agreements with other banks, purchase advise forms, lock detail and pricing engine reports, and communications and other documents with broker dealers and hedging firms regarding "enhanced pricing execution." (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 6-10). Numbers 14, 16 and 21 request lists of loans, including related underwriting documents, for all loans originated by Bickel, Bell, and Panto. (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 14, 16, 21).

The Bank argues that none of these RFPs seek relevant information. (Def.'s Memo. in Supp. of Sec. Mot. for Pro. Order, ECF No. 25, at 6-7; Def.'s Sec. Reply, ECF No. 29, at 5-6). It claims, r.ather, that Sciore seeks pricing engine reports, documents regarding pricing execution, and loan underwriting files "to improperly obtain information on the Bank's lending practices for his own pecuniary advantage." (Def.'s Sec. Reply, ECF No. 29, at 7-8). It also observes that the requested loan documents contain borrowers' personal identifying information. (*Id.* at 7). Sciore counters that the documents at issue in these RFPs are relevant because they "will all demonstrate that the Bank, as a result of Sciore's assistance, was able to transition into the lucrative secondary marketing space." (Pl.'s Sec. Opp., ECF No. 28, at 6). He also maintains

that he "is not a Bank competitor" and that, even if he was, a "carefully-crafted confidentiality agreement may address [the Bank's] concerns" regarding its proprietary information. (*Id.*).

Sciore fails to make a threshold showing of relevance as to the requested documents. *See Bell*, 270 F.R.D. at 195 (the discovering party must demonstrate relevance before the party seeking protection must demonstrate good cause). His sole explanation regarding the relevance of the sought-after documents is that they will show that through his assistance the Bank began operations in the "secondary marketing space." (Pl.'s Sec. Opp., ECF No. 28, at 6). Yet, his complaint is wholly devoid of any reference to the secondary mortgage market, the buying or selling of mortgages or servicing rights, or mortgage securitization. (*See generally*, Compl., ECF No. 1-15). Indeed, the assistance he alleges was all limited to the primary mortgage market, in which the Bank works directly with borrowers to secure mortgages for them. He claims that he provided Husic and other management at the Bank "consulting advice" regarding starting and building "a residential mortgage business," but he does not plead that he advised the Bank regarding any secondary marketing activities. (*Id.* at ¶ 16). He contends that he recruited "loan officers," who would assist with mortgage origination, but not other personnel who would have been involved with the sale or securitization of these mortgages. (*Id.* at ¶¶ 15, 21, 22). He also provided written training materials and a proprietary software platform that included a training curriculum for the Bank to train these loan officers, but, again, he does not aver that he assisted with training Bank personnel how to operate in the secondary mortgage market. (*Id.* at ¶¶ 17-19). As a result of Sciore's efforts, the Bank was allegedly able to "launch[ ]" a fledgling residential mortgage division, not "transition into the lucrative secondary marketing space," as he now alleges in his briefing. (*Id.* at ¶ 20; *see also* Pl.'s Sec. Opp., ECF No. 28, at 6).

Although discovery is "generally liberal," it "is not without limitations," nor should it degenerate into "a fishing expedition." *Upshaw*, 2014 WL 1244047, at *3. Accordingly, the

Bank's motion for a protective order is granted as to Second RFPs numbers 6 through 10, 14, 16 and 21 through 23.

### 5.     Second RFP Numbers 11, 12, 13 and 15

Second RFP numbers 11 and 12 request, respectively, all communications with Bell and Panto, while each was employed with the Bank, regarding "the generation of revenues by the Residential Mortgage Division."  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 11-12). Second RFP numbers 13 and 15 request, respectively, all documents and communications relating to each's "generation of and/or assistance with generation of, revenues for the Residential Mortgage Division."  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 13-15). The Bank contends that these RFPs are duplicative of First RFP numbers 8 through 10, to which it has already fully responded.[9]  (Def.'s Memo. in Supp. of Sec. Mot. for Pro. Order, ECF No. 25, at 5).  Sciore claims that the new RFPs are not duplicative because they "seek information *specifically related to revenues generated* by" Bell and Panto, whereas the earlier RFPs "merely sought more general information about these individuals' tenure of employment with the Bank, such as their personnel files."  (Pl.'s Sec. Opp., ECF No. 28, at 5 (emphasis in original)).  Sciore is correct that First RFP numbers 9 and 10 requested documents relating to Bell's and Panto's "employment with Defendant," including the circumstances of their hiring, their titles, and their

---

[9] In an apparent reference to Bickel, the Bank contends that these four Second RFPs "relat[e] to the generation by *one (1) current* and two (2) former Bank employees," and that the current employee "was <u>never</u> involved with the Residential Mortgage Division."  (Def.'s Memo. in Supp. of Sec. Mot. for Pro. Order, ECF No. 25, at 5) (first emphasis added; second emphasis in original); *see also* Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 8 (stating that Bickel continues to work at the Bank).  However, Second RFP numbers 11, 12, 13 and 15 relate only to Bell and Panto, not Bickel.  (Pl.'s Second Set of RFPs, ECF No. 25-3, at RFP Nos. 11-13, 15).  Further, First RFP number 8 relates only to Bickel, and thus Second RFP numbers 11, 12, 13, and 15, relating to Bell and Panto, are not duplicative of it. (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 8).

periods of employment.  (*See* Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP Nos. 9-10).  However, Sciore ignores the fact that these RFPs also requested all documents relating to the "revenue [Bell and Panto] generated on behalf of Defendant during [their] employment."  (*Id.*).  Thus, they also sought "information specifically related to revenues generated by" Bell and Panto, rendering the current RFPs duplicative.  (Pl.'s Sec. Opp., ECF No. 28, at 5).

Tacitly acknowledging this fact, Sciore also complains that the Bank produced no documents regarding revenues generated by Bell and Panto in response to First RFPs 9 and 10. (Pl.'s Sec. Opp., ECF No. 28, at 5).  The Bank replies that it produced no documents regarding revenue generated by them because neither generated any during each's brief tenure with the Bank.  (Def.'s Sec. Reply, ECF No. 29, at 7).  The Bank's "good faith averment that the items sought simply do not exist . . . resolve[s] the issue of failure of production . . . ."  *Margel*, 2008 WL 2224288, at *3.

Because the newer RFPs merely duplicate First RFP numbers 9 and 10, and because no responsive documents exist in any event, the Court grants the Bank the requested protective order as to Second RFP numbers 11, 12, 13 and 15.

### 6.    Second RFP Numbers 17 through 19

Second RFP numbers 17 and 18 request, respectively, "general ledger accounts" for the residential mortgage division and lists of daily transactions posted to these ledger accounts. Second RFP numbers 17 and 18 duplicate First RFP number 7, which requested "[a]ll financial documents relating to the Residential Mortgage Division's revenues," including, specifically, all "ledgers . . . and accounting records . . . ."  (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 7).  Accordingly, the Bank is entitled to a protective order permitting it not to respond to Second RFP numbers 17 and 18.

Number 19 requests "all of Centric's ***commercial*** loan subsidiary ledgers." (Second Set of RFPs, ECF No. 25-3, at RFP Nos. 17-18) (emphasis added). However, nowhere has Sciore alleged that he had any involvement with the Bank's commercial lending operations. On the contrary, he repeatedly alleges that he helped to begin and develop the Bank's ***residential*** mortgage division. Thus, this RFP seeks irrelevant information, and the Bank is entitled to a protective order as to it as well.

Because Second RFP numbers 17 and 18 duplicate an earlier-issued RFP, and because Second RFP number 19 seeks irrelevant information, the Bank's request for a protective order as to these RFPs is granted.

### 7.      Second RFP Number 20

Second RFP Number 20 requests all communications with Bickel in his capacity as a Bank employee relating to the Bank's generation of revenues. (Second Set of RFPs, ECF No. 25-3, at RFP No. 20). This RFP seeks irrelevant information, in part. While Bickel's generation of revenue may be relevant to the value of any benefit conferred upon the Bank by Sciore due to his alleged recruitment of Bickel, the generation of revenue by the Bank, as a whole, is not. Limited to communications regarding revenue generated by Bickel, this RFP merely duplicates First RFP number 8, which requested, *inter alia*, "[a]ll Communications and Documents relating to Christopher Bickel's employment with Defendant, including . . . the amount of revenue that Bickel has generated on behalf of Defendant during his employment." (Def.'s Answers and Objections to Pl.'s First Set of RFPs, ECF No. 20-2, at RFP No. 8). Accordingly, the Bank's motion for a protective order as to Second RFP Number 20 is granted.

### D.      The Bank's Expenses Related to the Motions

The Bank also moves to recover its expenses incurred in prosecuting the instant motions. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(C), "[i]f the motion [for a protective order]

is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).  Unlike with a fully granted motion, the imposition of expenses is not mandatory for a motion for a protective order granted only in part.[10]  *Compare* FED. R. CIV. P. 37(a)(5)(A), *with* FED. R. CIV. P. 37(a)(5)(C).  "[A]ppellate courts apply a deferential 'abuse of discretion' standard when reviewing trial court rulings with respect to expense shifting sanctions."  7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[11] (Matthew Bender 3d ed.) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310-1311 (3d Cir. 1995)) (additional citations omitted).

I decline to apportion the parties' expenses in litigating the motions.  Although I rejected many of the positions taken by Sciore as to the disputed RFPs, I cannot conclude that they were not "substantially justified."  *See Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (defining the term "substantially justified").  "If a [discovery motion] is granted in part and denied in part, and there is a determination that many of the discovery objections were substantially justified, courts frequently refuse to award expense shifting sanctions to either party."  7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[4][b] (Matthew Bender 3d ed.).  Here, Sciore articulated factual and legal bases for his positions, as set forth in his briefing, and the parties' genuine disputes about which reasonable parties could disagree necessitated the Court's careful consideration, as set forth in this memorandum.  *See Pierce*, 487 U.S. at 564-65; *Lafate v. Vanguard Grp., Inc.*, No. 13–cv–5555, 2014 WL 4384510, at *10 (E.D. Pa. Sept. 5, 2014) (denying request for fees regarding litigating discovery motion "[g]iven that . . . the parties had a

---

[10]  Even for a motion for a protective order granted in full, a court "must not" order the payment of expenses if the movant did not confer in good faith with the opposing party prior to filing, if the opposing party's position in the dispute was substantially justified or if the circumstances would make the imposition of expenses unjust.  FED. R. CIV. P. 37(a)(5)(A)(i)-(iii).

genuine dispute as to the scope of discovery in this case"); *see also* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[4][b].  Thus, each side shall bear its own fees and costs in litigating the motions.

## IV.    CONCLUSION

For the foregoing reasons, each of the Bank's motions for a protective order is granted in part and denied in part.  An appropriate order follows.

BY THE COURT:

 _/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge